UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINOEL V. GARDENHOUSE,

    Plaintiff,

v.

    Case No. 1:14-cv-96
    Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on June 20, 1964 (AR 587).[1] He alleged a disability onset date of May 5, 2005 (AR 587). Plaintiff completed the 10th grade and had previous employment as a construction worker and plant manager (AR 592, 596). Plaintiff identified his disabling conditions as middle and lower back pain (AR 591). This is not plaintiff's first attempt to obtain disability benefits. The administrative law judge (ALJ) summarized plaintiff's previous application for benefits as follows:

> The claimant has alleged disability since May 5, 2005. He has had, however, a previous Administrative Law Judge decision on the issue of disability. Specifically, on July 2, 2009, Administrative Law Judge Mary Ann Poulose found that the claimant had not been under a disability, as defined in the Social Security Act, from May 1,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

> 2004 through the date of the decision (Exhibit B1A). By notice dated November 21, 2009, the Appeals Council denied the claimant's request for review (Exhibit B2A).
>
> The July 2, 2009 decision has become administratively final and binding (20 CFR 404.900(b), 404.955, 416.1400, and 416.1455). Therefore, earliest date that the claimant can now be considered disabled is July 3, 2009, the day after the prior Administrative Law Judge's decision.

(AR 10).

> Plaintiff's present claim, commencing on July 3 2009, was denied by the ALJ, but then

remanded back from the Appeals Council:

> This case is before the undersigned Administrative Law Judge on an August 31, 2011 remand from the Appeals Council concerning the claimant's claims for disability, which were filed on October 26, 2009. . . .
>
> In its remand order, the Appeals Council directed the undersigned to re-evaluate the claimant's IQ testing at Exhibit B9F, obtain additional evidence to complete the administrative record, and give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale (Exhibit B8A).

(AR 10). On remand, the ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits on September 21, 2012 (AR 10-25). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284,

286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her

> past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the July 3, 2009, the day after the previous ALJ's decision, and that he met the insured status requirements of the Act through December 31, 2009 (AR 12-13). At the second step, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease with bilateral lumbar facet joint arthropathy (status-post

laminectomy and spinal fusion/failed back syndrome), borderline intellectual functioning, and mild chronic depression (AR 13). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 14). Specifically, plaintiff did not meet the requirements of Listings 1.04 (disorders of the spine), 12.02 (organic mental disorders), or 12.04 (affective disorders) (AR 14-16).

The ALJ decided at the fourth step:

> [T]hat the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds; must avoid exposure to temperature extremes; and needs a sit-stand option every 15 minutes. He can understand, remember, and carry out simple instructions; cannot do detailed or complex work; can follow verbal descriptions but cannot read written instructions; can do work having very limited math requirements; can occasionally have contact with the general public, coworkers, and supervision; and can work in a small, familiar group setting with close supervision required.

(AR 16-17).

In reaching this determination, the ALJ adopted most of the limitations as set forth in the prior ALJ's decision:

> In accordance with Acquiescence Ruling (AR) 98-4(6), the undersigned adopts the residual functional capacity finding of the prior Administrative Law Judge. In view of new and material medical evidence presented at the hearing level (particularly with reference to the November 4, 2010 Javery Pain Institute records), the undersigned modifies the sit-stand alternately at will option in the prior Administrative Law Judge's decision to the limitation that the claimant needs a sit-stand option every 15 minutes.

(AR 21). The ALJ also found that plaintiff was unable to perform his past relevant work (AR 23).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 24-25). Specifically, plaintiff could perform

the following work in the State of Michigan: bench assembler (4,900 jobs); sorter (5,000 jobs); and machine attendant (4,000 jobs) (AR 24-25). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 3, 2009 (the day after the prior ALJ's decision) through September 21, 2012 (the date of the decision) (AR 25).

### III. ANALYSIS

Plaintiff did not set forth a statement of errors as directed by the Court.[2] The Court construes plaintiff's brief as raising the following issue on appeal:

> **The ALJ erred by posing a hypothetical question to the vocational expert (VE) which omitted plaintiff's need to use a cane to stand and walk.**
>
> **A.     ALJ's determination that plaintiff did not need a cane to stand and ambulate**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those

---

[2] *See* Notice (docket no. 8). In his brief, plaintiff presented the following argument:

> In response to the ALJ's hypothetical, the vocational expert testified that, if such an individual needed to use a cane while exercising the sit/stand option, he would be off-task in excess of what is customarily tolerated in the workplace and would thus be unemployable. The overwhelming evidence of record supports Plaintiff's need to use a cane to stand and walk.

Plaintiff's Brief (docket no. 11 at p. ID# 1141).

6

limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

At the hearing on remand, the ALJ posed the following hypothetical question to the VE:

> If you were to assume for a moment a physical exertional set of limitations that would apply to somebody of Mr. Gardenhouse's age, education, and past work experience that would essentially be a sedentary set of limitations which would allow for occasional balancing, stooping, kneeling, crouching, crawling; occasional ramp and stair climbing, but no ladder, rope, or scaffold climbing; must avoid exposure to temperature extremes; would require an option to either sit or stand every 15 minutes if need be; and from a psychological standpoint would require limitations such as Dr. Andert described and that would essentially be you'd have the ability to understand, remember, and carry out simple instructions, but no detailed or complex work; would allow for occasional general public, coworker, and supervisory contact; the work should probably involve no reading and only limited math calculations such as those claimant describe performing in his work at Ellenbost [i.e., material handler]; small and familiar employment setting; would require verbal instructions and not written; would require close supervision in the sense that the supervisor would have to be alert to the issues that the -- were described by Dr. Andert in terms of carrying out job functions.

(AR 94-95). Based on these restrictions, the VE testified that while plaintiff could not perform his past relevant work, he could perform the 13,900 sedentary jobs identified in the ALJ's decision (AR 95).

As a followup, the ALJ addressed plaintiff's alleged need to use a cane:

[ALJ] Would any of those jobs be affected by a person who would need to use a one-point cane to get to the work station and get back to the car?

[VE] No, it would not.

[ALJ] Would they be affected by an individual who would need to use the cane for standing?

7

    [VE]    Yes, in particular if they -- if they needed to exercise the sit/stand option. These are jobs [t]hat could be performed the majority of the day sitting down, but if the person needed to use the sit/stand option that was discussed and needed the cane in order to do that, I believe it would [sic] them off task.

    [ALJ]    About how much cane usage would an employer allow for these types of jobs?

    [VE]    Generally it would be allowed for the ambulation to and from station areas.

(AR 95-96). In sum, if plaintiff required the use of a cane to stand, as well as a sit/stand option, then he would not be able to meet the requirements to perform the 13,900 jobs identified by the VE.

Under the doctrine of *res judicata*, plaintiff retained the residual functional capacity (RFC) to ambulate without a cane as of July 2, 2009 (AR 10, 21). Accordingly, the only relevant evidence with respect to cane use is that developed on or after July 3, 2009. In reaching this determination, the ALJ noted that during the relevant time period, plaintiff had utilized only conservative treatment:

> Since the prior Administrative Law Judge's decision, the claimant has received only conservative treatment for his back impairment. His treatment has consisted of injections at a pain clinic and the prescription of medications (Exhibits B15E, B29E, B32E, B12F/6, B23F-B25). At the prior hearing, while the claimant initially reported that he had no side effects from his medications, upon his representative's questioning, he recalled that his medications made him sleepy. At the prior hearing, he also acknowledged that his pain was relieved somewhat with his medication usage. While the claimant told his primary care provider in December 2010 that he had never been on a medication that was effective (Exhibit B24F/33), on May 30, 2012, he told Dr. Smith that his low back pain was fairly stable and that he tolerated medications well (Exhibit B25F/16).

(AR 18).

The ALJ also noted that "[a]t the June 26, 2012 hearing, the claimant testified that because of his back condition, he uses a cane to walk" (AR 17). The ALJ addressed plaintiff's alleged need to use a cane as follows:

> The claimant brought a cane with him to the June 26, 2012 hearing. Family Health Center and Javery Pain Institute records reveal that the claimant has only intermittently used a cane. It was not until the claimant's November 4, 2010 appointment at the Javery Pain Institute that the claimant was observed to have an ataxic gait and actually ambulated with a cane (Exhibit B11F/3, 9, 13; B12F/2-4). It additionally can be argued that the use of a cane is not necessary from a medical standpoint per the observations of Dr. Smith who has documented that the claimant has had normal leg strength (Exhibit B1F/26, 30) and the Javery Pain Institute records. The Dr. Javery records have disclosed that the claimant's right and left lower extremity strength has been within normal limits and that he has normal muscle tone and no atrophy. He has been described as having a normal gait, standing without difficulty, and being able to do heel-to-toe straight-line walking normally (Exhibits 11F/9, 13; 24F/5-6, 9, 13-14,31,35). Other physicians of record have also found normal leg strength (Exhibits 7F/16, 20,80,93, 110, 119; B20F/5).
>
> The claimant retains the physical functional capacity for less than the full range of sedentary work. In view of the limitation for sit-stand option every 15 minutes and the medical expert's credible testimony that the claimant's cane usage would not significantly take him off task, the undersigned finds that the claimant's use of a cane does not impose an additional limitation.

(AR 22).

Plaintiff contends that the ALJ's hypothetical question was flawed because the medical evidence established that he required the use of a cane.

### B.     Lauren S. Smith, M.D.

Plaintiff contends that Dr. Smith's opinions supported this limitation. The ALJ evaluated the doctor's opinions as follows:

> On November 5, 2008, treating source Lauren S. Smith, M.D., concluded that the claimant should do no lifting over 10 pounds and do no crawling or stooping (which would be consistent with the physical residual functional capacity finding of this decision) (Exhibit B1F/3). On July 27, 2009, Dr. Smith observed only that the claimant's symptoms were most likely permanent and would affect his activities of

9

> adult daily living and ability to work permanently. The doctor did not provide specific information on how the claimant's daily living activities or work abilities would be affected. The doctor did note, however, that the claimant was able to do light duty work around his house (Exhibit B1F/10). While the undersigned does not assign significant weight to Dr. Smith's July 2009 opinions, the undersigned notes that the November 2008 conclusion is consistent with the reliable evidence through the date of this decision. The undersigned gives significant weight to the November 5, 2008 functional capacity opinion.
>
> On January 12, 2011, Dr. Smith related that the claimant had chronic low back pain for which he had failed conservative treatment, walked with a cane, and most likely would not be able to hold down a job. The undersigned assigns no weight to Dr. Smith's January 2011 opinion. Notably, the January 2011 opinion is conclusory and is based upon the claimant's subjective complaints, without reference to any objective medical findings. In addition, the doctor's opinion does not contain a function-by-function analysis. The undersigned further notes that Dr. Smith has reported that the claimant has had essentially normal physical findings, including normal leg strength at the physical examinations of June 29, 2009 (which is six months prior to the claimant's date last insured) and December 27, 2009 (which is the month in which the claimant last has disability insured status) (Exhibit B1F/26, 30). Dr. Smith has additionally documented the claimant's report that he was "walking a fair amount" (Exhibit B1F/33).

(AR 20-21).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ gave good reasons for the weight assigned to Dr. Smith's opinions. The ALJ found that it was significant that Dr. Smith's January 2011 opinion did not include a function-by-function analysis of plaintiff's condition. Plaintiff admits that Dr. Smith's did not include such an analysis. Plaintiff's Brief at p. ID# 11. In this regard, Dr. Smith does not state that plaintiff *needs* a cane; rather, her handwritten note states that plaintiff "walks w/a cane" (AR 971). In addition, while plaintiff recounts his medical history to show that he needs a cane to ambulate, this Court does not perform a *de novo* review of the evidence to make such a determination. *See Brainard*, 889 F.2d at 681.

Finally, although Dr. Smith was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled"). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984). Accordingly, the ALJ did not err in evaluating Dr. Smith's opinion.

### C. Tama D. Abel, M.D. and R. Scott Lazzara, M.D.

The medical record includes opinions by two examining physicians, Dr. Abel and Dr. Lazzara. Plaintiff contends that the ALJ should have chosen Dr. Lazzara's 2010 opinion (that plaintiff needs a cane) over Dr. Abel's 2011 opinion (that plaintiff does not need a cane). The ALJ addressed Dr. Abel's opinion as follows:

> The undersigned gives great weight to the consulting physician, Tama D. Abel, M.D. (Exhibit B20F). Dr. Abel has observed (as other examiners have pointed out) that there are serious questions about the claimant's effort and cooperation upon physical examination. Notably, on the October 20, 2011 examination date, the claimant was generally uncooperative with the doctor. The doctor could not adequately determine the claimant's gait, as he would not take even one step without use of his cane, on which he leaned very heavily in the examination room. Yet, he was observed in the waiting area as having no difficulty arising from a chair and walking at a reasonable pace to the examination area. He had no difficulty standing up and balancing on the scale to be weighed, without requiring his cane. In addition, he was able to step off the scale without losing his balance. In the examination room, he moved excruciatingly slowly from a seated position to a standing position and leaned heavily on his cane when asked to stand and perform sequential orthopedic maneuvers. When asked to perform lower extremity orthopedic maneuvers, he stated that he could not get on and off the examination table, heel and toe walk, squat and arise, balance, or perform tandem walking. Nonetheless, the claimant was observed

12

> to leave the examination building and step off the curb onto the parking lot surface without difficulty. He was seen to be able to enter a car without assistance on the passenger side and seat himself inside the vehicle with no difficulty. He then was observed to use his right arm to grasp the door handle and easily pulled the door shut (Exhibit B20F/2).

(AR 21).

The ALJ found Dr. Lazzara's opinion based on an earlier examination to be less persuasive:

> Minimal weight is assessed to the January 12, 2010 one-time physical consultative examination findings and conclusions at Exhibit B5F/10-14 due to the incongruity of Dr. Lazzara's examination findings with those of the other multiple physicians noted above. Indeed, many of those physicians specialize in spinal care, which Dr. Lazzara, an internal medicine physician, does not.

(AR 20). Unlike Dr. Abel, Dr. Lazzara noted that plaintiff was cooperative during the examination (AR 786). Dr. Lazzara noted that while plaintiff had some neuropathy and myelopathy to the right leg, there was no finding of atrophy (AR 789). Dr. Lazzara also found that plaintiff was unable to do orthopedic maneuvers (AR 789). In addition, Dr. Lazzara found that plaintiff "does require the use of a cane to ambulate as he had minimal weight bearing on the right foot" (AR 789).

"It is within the authority of the ALJ to resolve any conflicts among the opinions of treating and examining physicians." *Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996). *See Craft v. Commissioner of Social Security*, 39 Fed. Appx. 274, 276 (6th Cir. 2002) ("[i]t is the Commissioner's function to resolve conflicts in the medical evidence"). Non-treating physicians or psychologists who examine a claimant only once are not granted the presumption of controlling weight afforded to treating physicians under 20 C.F.R. §§ 404.1527(c) and 416.927(c). *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir. 2010). While the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion,

*Wilson*, 378 F.3d at 545 , this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007).

Here, the ALJ was faced with two examining consultants who had divergent opinions regarding plaintiff's use of a cane. Plaintiff contends that the ALJ should have given Dr. Lazzara's opinion greater weight because he was an SSA examiner. In this regard, Dr. Abel was also an SSA examiner (AR 1010-23). Plaintiff also contends that Dr. Abel was the only examining physician to question his "presentation on physical examination during the period under adjudication." Plaintiff's Brief at p. ID# 1157. While this is true, the ALJ noted that plaintiff demonstrated a lack of effort during his psychological testing which also occurred in October 2011, "because the claimant had long pauses as though he were attempting to figure out what he should say concerning the letters and simple words that are automatically expressed, even by mentally and psychiatrically impaired individuals" (AR 18). This lack of effort was noted by the medical expert at plaintiff's hearing (AR 72-74). Ultimately, the ALJ was faced with two consulting opinions, separated by more than 1 1/2 years, each supported by functional assessments, which reached different results. The ALJ chose the more recent opinion from October 2011, noting that plaintiff appeared non-cooperative and exerted little effort in the most recent examinations. Accordingly, the ALJ did not err in giving greater weight to Dr. Abel's opinion.

### C. Functional evaluation performed by occupational therapist

The medical record includes an evaluation and opinion by an occupational therapist, which the ALJ addressed as follows:

> The undersigned rejects the opinions expressed by the occupational therapist in January 2011 at Exhibits B15F and B18F/8 because the occupational therapist is

>not an acceptable medical source to provide an opinion of the claimant's level of functioning for Social Security purposes. While the undersigned would normally consider the occupational therapist's objective observations, the undersigned notes that few such observations have been provided. The occupational therapist appears to have based her opinion almost entirely on the claimant's subjective complaints. Moreover, the therapist's conclusion that the claimant does not appear capable of sustaining full-time work activity is contradicted by other acceptable medical sources.

(AR 19).

The opinion of the occupational therapist, Ms. Rounds, is not subject to deference under the treating physician rule, which applies to the opinions of acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a). As a therapist, she is not an acceptable medical source whose opinions are given deference under the rule. *See Perschka v. Commissioner of Social Security*, 411 Fed. Appx. 781, 787 (6th Cir. 2010) (physical therapist could not provide evidence to establish a listed impairment because a therapist is not an acceptable medical source). Rather, her opinion is considered as evidence from an "other" source. *See* 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1) (evidence from "other" medical sources includes information from nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists). *See Engebrecht v. Commissioner of Social Security*, 572 Fed. Appx. 392, 399 (6th Cir. 2014) (the opinion of a therapist "is not properly classified as an 'acceptable medical source' opinion but is an 'other source' opinion" under the regulations). Generally, the ALJ should review a physical therapist's records which provide insight into the severity of a claimant's impairments and ability to function. *Id.* Here, the ALJ reviewed those records but rejected Ms. Rounds' opinions because they were based almost entirely on plaintiff's subjective complaints. *Id.* The ALJ did not err in evaluating the occupational therapist's records.

15

### D. Summary

Based on this record, the hypothetical question posed to VE was supported by substantial evidence and accurately portrayed plaintiff's limitations. Plaintiff's claim that the ALJ erred by posing a hypothetical question to the VE which omitted plaintiff's need to use a cane to stand and walk is denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated:  March 30, 2015                          /s/ Hugh W. Brenneman, Jr.
                                                HUGH W. BRENNEMAN, JR.
                                                United States Magistrate Judge